**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> COREY CORNELIUS, ) <br> ) <br> Defendant. ) <br> ) | **CRIMINAL ACTION** <br><br> No. 09-10112-01-MLB |

**MEMORANDUM AND ORDER**

This case comes before the court on defendant Corey Cornelius' motion to suppress. (Doc. 19). The motion is fully briefed and the court conducted an evidentiary hearing on December 7, 2009. (Doc. 21). The motion to suppress is granted for the reasons herein.

**I. FACTS**[1]

On September 3, 2009, Wichita Police Department ("WPD") Officer Shek Weber drove by 1652 N. Estelle in Wichita, Kansas.[2] Officer Weber saw several people, including defendant Corey Cornelius, standing in the yard in front of the Estelle residence. Officer Weber recognized defendant and believed that he was currently a gang member or had been one previously. Officer Weber did not see the owner of the Estelle residence, Marion Carter, among the people in front of his house. Prior to this incident, Marion Carter had signed a "trespass

---

[1] The facts consist of Officers Jonathan Estrada and Shek Weber's testimony and evidence admitted at the hearing.

[2] Officer Estrada testified that the Estelle residence is one of three houses on the block known for drug and gang activity.

affidavit,"³ which authorized WPD to ask and/or remove people from Carter's home and yard when he was not home.

Officer Weber drove by the Estelle residence again and continued seeing the same people "hanging out" in the yard. Although Officer Weber believed that these people had no legitimate reason for being there, he did not stop or attempt to contact Carter at this time.

At approximately 6:53 p.m., Officer Weber heard dispatch report that there was a disturbance at the Estelle residence. Officer Weber drove back to the Estelle residence and saw defendant leaving when he pulled up. Defendant was no longer in the front yard and was the closest person to the street.

Officer Weber saw defendant put something inside a black SUV that was parked across the street from the Estelle residence and then start walking south on Estelle. Officer Weber asked defendant to stop because he wanted to talk to him. Defendant walked away and stated that he did not want to talk. "Off[icer] Weber continued to repeat the command to stop, explaining that he needed to talk to the defendant to "trespass" him from the residence. (Doc. 21 at 2). Defendant continued saying that he did not want to talk, but eventually stopped.

WPD Officer Jonathan Estrada was also dispatched to the Estelle residence. As he approached, dispatch reported that the caller said there were several people whom he did not want at the Estelle residence. While Officer Estrada was talking to an individual who was

---

³Officer Weber testified that "trespass affidavits" are often signed by citizens living in high crime areas because they give WPD the authority to "trespass," i.e. remove people from residences when the owners are not home.

getting into a red vehicle, he heard a man talking loudly by a black SUV. He looked towards the SUV and saw Officer Weber speaking to defendant. They were facing each other and standing about one foot apart. Defendant was carrying an open beer can in his hand, waiving his arms, and stated very aggressively that he did not have to speak to Officer Weber. Officer Weber responded that he needed to speak with defendant because of the open trespass complaint and "trespass" him from the residence.

Officer Estrada walked over and stood behind defendant. Officer Estrada noticed a bulge in defendant's right front pocket. Defendant was wearing blue sweat pants and when he would move, the bulge would sway back and forth which caused his pants to also move back and forth. Officer Estrada thought that the bulge could possibly be a weapon. He testified that he was in a "gang banger" neighborhood with a lot of drug activity and he wanted to pat defendant down for officer safety.

Officer Estrada told defendant to put his hands on his head. Defendant said that he had no right to search his person. Officer Estrada said that he was not going to search his person, but just pat him down. Officer Estrada took defendant's right hand so that he could place it on defendant's head, but defendant spun around to the left and started running.

Both Officers Estrada and Weber chased after defendant. Both deployed their tasers towards defendant, but missed. Officer Weber saw defendant reach into his right front pocket where the bulge was and toss something near a tree located at the corner of Volutsia and Estelle. The chase continued east bound on 15th street and until

defendant gave up.

Officers Weber and Estrada went back to the tree where defendant made the throwing motion and found a plastic baggie that contained one crack rock inside. Officer Estrada testified that the plastic baggie was not the bulge in defendant's pocket. No weapon was found on defendant's person. Officer Estrada believes the heavy object in defendant's pocket was either a cell phone or cell phone charger.

**II.    ANALYSIS**

<u>Suppression</u>

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. There are exceptions, however, where law enforcement may reasonably conduct warrantless searches without violating the Fourth Amendment. <u>United States v. Gwathney</u>, 465 F.3d 1133, 1138 (10th Cir. 2006). One such exception was articulated in <u>Terry v. Ohio</u>, 392 U.S. 1 (1968), in that law enforcement officers are justified in temporarily detaining individuals who they reasonably suspect to have committed or are presently committing a crime. <u>Arizona v. Johnson</u>, 129 S.Ct. 781, 786 (2009). "An officer who 'stops' and briefly detains a person for questioning 'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" <u>United States v. Davis</u>, 94 F.3d 1465, 1468 (10th Cir. 1996) (quoting <u>Terry</u>, 392 U.S. at 21). Additionally, if police officers reasonable believe that the suspect is armed and dangerous, then they may conduct a patdown of the outer clothing to look for weapons without violating the Fourth Amendment.

Johnson, 129 S.Ct. at 786.

Defendant contends that Officers Weber and Estrada had no reasonable suspicion that he was trespassing on Carter's property. Under Kansas law, criminal trespass is entering or remaining upon or in any land after being told to leave or in defiance of an order or sign prohibiting entry upon or into the premises. K.S.A. 21-3721(a).

Officer Weber testified that when he first saw defendant he had no reason to believe he was committing the crime of trespass. Both Officers Weber and Estrada testified that they had no information that defendant was told to leave Carter's residence and refused. Additionally, they initially had no reason to believe defendant was armed and dangerous or that he committed any other crime.[4] Defendant was already leaving when Officer Weber drove up. Officer Weber testified that defendant "needed to be warned about trespass" and that was why he told defendant to stop. Defendant was not free to leave at this point.

The court finds that the seizure of defendant was not justified under Terry. Both officers testified that they had no probable cause or reasonable suspicion that defendant committed a crime. Defendant did not consent and attempted to walk away. Therefore, detaining defendant and attempting to pat him down after he repeatedly told Officers Weber and Estrada that he did not want to talk with them violated his Fourth Amendment right.

---

[4]Officer Weber first testified that defendant committed the crime of trespass. However, on cross-examination, Officer Weber testified that it is not a crime of trespass to merely be on one's property. The individual must first be told to leave and he or she refuses or be violating a posted sign or court order before being on another's property becomes the crime of trespass.

### Abandonment

The government responds that the drugs should not be suppressed because defendant abandoned the baggie that contained the crack rock when he removed it from his pocket and tossed it by the tree.

The "abandoned property exception" to warrant requirement under the Fourth Amendment allows the government to search and seize abandoned property without a warrant. United States v. Flynn, 309 F.3d 736, 738 (10th Cir. 2002).

> The test for abandonment is whether the defendant retained a reasonable expectation of privacy in the property. (Citations omitted). ...
>
> In order to be effective, abandonment must be voluntary. It is considered involuntary if it results from a violation of the Fourth Amendment. (Citations omitted). "[P]olice pursuit or investigation at the time of abandonment does not of itself render the abandonment involuntary." (Citations omitted). However, property is considered to have been involuntarily abandoned if the defendant discards it as a consequence of illegal police conduct.

Id. "If the alleged abandonment follows a Fourth Amendment violation, the voluntariness of the abandonment is analyzed the same as the voluntariness of a consent to search following a Fourth Amendment violation." United States v. Walker, 879 F. Supp. 1087, 1091 (D. Kan. 1995).

The court finds that defendant did not voluntarily abandon his property. As held supra, the initial detention and attempted patdown of defendant violated the Fourth Amendment. Defendant had been seized and discarded the property as a consequence of Officers Weber and Estrada's illegal conduct. Compare United States v. Quintana-Grijalva, No. 08-2207, 2009 WL 1652274, at *5 (10th Cir. 2009) (noting that

defendant was not seized before he abandoned the property). At the time he tossed the baggie, defendant was being chased by Officers Weber and Estrada who had also attempted to tase him. Defendant did not freely abandon his property. Therefore, the "abandoned property exception" does not apply to the warrantless search and seizure of the baggie containing the crack-cocaine and this evidence is suppressed.

## III.  CONCLUSION

As a result of the above analysis, the court finds that defendant's Fourth Amendment rights were violated. The crack-cocaine found during the search and seizure is required to be suppressed as "fruit of the poisonous tree." See Wong Sun v. United States, 371 U.S. 471, 484 (1963) (requiring exclusion of evidence obtained through an illegal search).

Defendant's motion to suppress is GRANTED.

IT IS SO ORDERED.

Dated this __14th__ day of December 2009, at Wichita, Kansas.

s/ Monti Belot  
Monti L. Belot  
UNITED STATES DISTRICT JUDGE